David H. Krieger, Esq.
Nevada Bar No. 9086
KRIEGER LAW GROUP LLC
HENDERSON OFFICE
2850 W. Horizon Ridge Parkway, Suite 200
Henderson, Nevada 89052
Phone: (702) 848-3855
Email: dkrieger@kriegerlawgroup.com

Miles N. Clark, Esq.
Nevada Bar No. 13848
KNEPPER & CLARK LLC
5510 S. Fort Apache Rd, Suite 30
Las Vegas, NV 89148-7700
Phone: (702) 856-7430
FAX: (702) 447-8048
Email: miles.clark@knepperclark.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| ERICA COUCH and THOMAS COUCH, <br><br> Plaintiffs, <br><br> v. <br><br> INDIANA FINANCE COMPANY, <br><br> Defendant. | Civil Action No.: 1:21-cv-02998 <br><br> **COMPLAINT FOR DAMAGES PURSUANT TO THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681, ET SEQ.** <br><br> **JURY TRIAL DEMANDED** |

**JURISDICTION AND VENUE**

1. This Court has federal question jurisdiction because this case arises out of violations of federal law. 15 U.S.C. § 1681 *et seq.*; 28 U.S.C. § 1331.

2. This action arises from violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x ("FCRA").

3. Venue is proper in the United States District Court for the Southern District of Indiana pursuant to 28 U.S.C. § 1391(b) because Plaintiffs are residents of Decatur County, the State of Indiana and because Defendant is subject to personal jurisdiction in Decatur County, State of Indiana as it conducts business there.  Venue is also proper because the conduct giving rise to this action occurred in Indiana.  28 U.S.C. § 1391(b)(2).

## PARTIES

4. Plaintiffs Erica Couch ("Mrs. Couch") and Thomas Couch ("Mr. Couch") (collectively, "Plaintiffs") are natural persons residing in Decatur County, State of Indiana. In addition, each Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

5. Defendant Indiana Finance Company ("Indiana Finance") is a corporation doing business in the State of Indiana.  Indiana Finance is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

6. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendant.

## FACTUAL ALLEGATIONS – FCRA VIOLATIONS

### *General Allegations, FCRA Liability, and Industry Reporting Guidelines*

7. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting.  Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the FCRA to insure fair and accurate reporting, promote efficiency in the banking system,

and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers.

8. The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting. Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

9. To the extent Plaintiffs' creditors chose to furnish data to a Credit Reporting Agency ("CRA"), such data should have been included in Plaintiffs' "consumer files."

10. Furthering the FCRA's goal of accuracy, a consumer may dispute the accuracy or completeness any item of information appearing in their file. 15 U.S.C. § 1681i(a). Once notified of a dispute, a CRA must notify the source or furnisher of information, including all relevant information regarding the dispute the CRA received from the consumer. 15 U.S.C. § 1681i(a)(2).

11. Upon receipt of a notice pursuant to 15 U.S.C. § 1681i(a)(2), the furnisher of the information must review all relevant information provided by the CRA, conduct an investigation of the disputed item, and report the results of the investigation back to the CRA. 15 U.S.C. § 1681s-2(b).

12. If the furnisher's investigation yields results such that the information disputed by the consumer is incomplete or inaccurate, then the furnisher must report those results to all other CRAs. 15 U.S.C. § 1681s-2(b)(1)(D).

13. If the CRA's reinvestigation (which necessarily includes the furnisher's investigation) finds the disputed information to be inaccurate, incomplete, or unable to be verified, then the CRA must either promptly delete that information or modify it, as appropriate, based on the results of the reinvestigation. 15 U.S.C. § 1681i(a)(5)(A).

14. The CRA must timely notify the disputing consumer regarding the results of the reinvestigation. 15 U.S.C. § 1681i(a)(6). As part of this notice of results of reinvestigation, the CRA must provide a "consumer report." 15 U.S.C. § 1681i(a)(6)(B)(ii).

15. Additionally, Defendant's conduct described herein also failed to comply with the Consumer Data Industry Association's ("CDIA's") Metro 2 reporting standards ("Metro 2"), which provides guidance for credit reporting and FCRA compliance.

16. The CDIA publishes the Metro 2 reporting standards to assist furnishers (like Defendant) with their compliance requirements under the FCRA.

17. A furnisher's failure to follow industry reporting guidelines may establish materially misleading reporting where (1) the furnisher adopts the standard, (2) the furnisher deviated from the standard, and (3) this "deviation might adversely affect credit decisions—in other words, that entit[ies] would have expected [the defendant furnisher] to report in compliance with the [CRRG] guidelines." *Nissou-Rabban v. Capital One Bank (USA)*, No. 15-cv-1675 JLS (DHB), 2016 WL 4508241, at *5 (S.D. Cal. June 6, 2016) (citations

and quotations omitted). *See also Wylie v. Experian, LLC*, No. 16-cv-102, 2017 WL 835205, at *5-7 (W.D. Pa. Mar. 2, 2017).

18. On information and belief, Defendant adopted the Metro 2 reporting standards and at all times relevant implemented the Metro 2 format as an integral aspect of its duties under the FCRA to have in place adequate and reasonable policies and procedures to handle investigations of disputed information.

19. The Metro 2 format guidelines provide specific instruction for reporting secured obligations. However, despite the Metro 2 Format's instructions, Defendant failed to conform to the Metro 2 Format when reporting on Plaintiffs' account.

20. Thus, the incomplete and inaccurate reporting provided to Plaintiffs as described herein departed from the credit industry's own reporting standards and was not only inaccurate and incomplete, but also materially misleading under the CDIA's standards as well.

21. This is true both under Metro 2, and if Metro 2 does not apply. For example, even if Metro 2 does not apply, then Defendant was required to report historically accurate information, pursuant to 15 U.S.C. § 1681s-2(b).

22. The inaccurate reporting provided to Plaintiffs as described herein was not only patently incorrect, but also materially misleading. *See Levine v. JPMorgan Chase & Co.*, 46 F. Supp. 3d 871, 875 (E.D. Wis. 2014).

### *Plaintiffs' Chapter 7 Bankruptcy and Procuring of Credit Reports*

23. On September 10, 2020, Plaintiffs filed for Chapter 7 Bankruptcy in the United States Bankruptcy Court for the Southern District of Indiana pursuant to 11 U.S.C. § 701 *et seq*. Plaintiffs' case was assigned Case Number 20-05108-JJG-7 ("Bankruptcy"). BK ECF No. 1.

24. In their bankruptcy petition ("Petition"), Plaintiffs included an obligation ("Debt") from Indiana Finance on Schedule F of their petition.

25. Thereafter, Plaintiffs earned their Chapter 7 bankruptcy discharges on December 22, 2020 – including a discharge of their Indiana Finance obligation.

26. Pursuant to Section 1681g, Plaintiffs requested their credit reports from reporting agency Equifax Information Services, LLC ("Equifax").  Mrs. Couch received her disclosure on March 30, 2021; Mr. Couch received his disclosure on June 16, 2021. (collectively, "Credit Reports").  Plaintiffs subsequently procured their reports from Equifax again on November 7, 2021 (collectively, "Subsequent Credit Reports").

27. On September 10, 2021, and pursuant to Section 1681i, separate written dispute letters for Plaintiffs were sent to Equifax regarding disputes of accuracy of their reported information ("Disputes").

## **INDIANA FINANCE FCRA VIOLATIONS**

*Indiana Finance violated 15 U.S.C. § 1681s-2(b)*
*with respect to Mr. Couch (Count 1) and Mrs. Couch (Count 2)*

28. On Plaintiffs' reports, Indiana Finance inaccurately reported their account as having been repossessed.  This was inaccurate, as Plaintiffs' Indiana Finance account had been included and discharged in the Bankruptcy.  Reporting this information inaccurately suggested Plaintiffs did not receive the full benefit of their bankruptcy discharge, or that the account might still be collectible.

29. In Plaintiffs' dispute letters, they placed Indiana Finance on notice of the inaccuracy of this reported information, and requested the information be corrected.

30. Upon information and belief, upon receiving Plaintiffs' applicable dispute letters, Equifax notified Indiana Finance of the applicable disputes based on its mandated statutory duty pursuant to 15 U.S.C. § 1681i(a)(2).

31. Indiana Finance was required to conduct an investigation into this specific account on Plaintiffs' consumer reports pursuant to 15 U.S.C. § 1681s-2(b), and in the event it corrected inaccurate information (either during the reinvestigation or afterwards), report that information both to Equifax and all other reporting agencies to which it reported on Plaintiffs' account. *See* 15 U.S.C. § 1681s-2(b)(1)(D)-(E).

32. However, there is no indication that Indiana Finance ever made the corrections Plaintiffs requested.

33. By failing to correct Plaintiffs' tradelines, Indiana Finance ensured that their accounts would continue to report inaccurately.

34. These failures caused Plaintiffs' Credit Files to include materially misleading omissions, which in context created misperceptions about Plaintiffs' dispositions of the Debt.

35. A reasonable investigation by Indiana Finance at any point following this dispute letter would have indicated Plaintiffs' account was discharged.

36. Indiana Finance failed to conduct a reasonable investigation, as required by 15 U.S.C. § 1681s-2(b).

37. Indiana Finance failed to review all relevant information provided by Plaintiffs in the disputes to Equifax, as required by and in violation of 15 U.S.C. § 1681s-2(b)(1)(B).

38. Due to Indiana Finance's failure to reasonably investigate Plaintiffs' disputes, it further failed to correct and update Plaintiffs' information as required by 15 U.S.C. § 1681s-

2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681s-2(b)(1)(C).

39. Plaintiffs have suffered concrete and imminent harm to their creditworthiness. The Subsequent Credit Reports showed that not only was the Indiana Finance account still reporting inaccurately, but also demonstrated numerous entities procured Plaintiffs' consumer reports during the two-year period preceding Plaintiffs' disputes and after the statutory period for resolving the dispute had expired. Moreover, prospective creditors who wished to make a firm offer of credit or insurance to Plaintiffs may have excluded them from lists of consumers who received such offers, or else would have factored the inaccurate and confusing information into the terms of any firm offer they decided to extend to Plaintiffs. Thus, the inclusion of derogatory information presents an imminent, material risk of harm Plaintiffs' creditworthiness has been, and continues to be, damaged.

40. Indiana Finance's continued inaccurate and negative reporting of the Debt in light of its knowledge of the actual error was willful. Indeed, Indiana Finance clearly knew about the disposition of Plaintiffs' accounts because it received notice of the Bankruptcy. Plaintiffs are, accordingly, eligible for statutory damages.

41. Also as a result of Indiana Finance's continued inaccurate and negative reporting, Plaintiffs have suffered actual damages, including without limitation issues regarding credit standing, out-of-pocket expenses in challenging Defendant's inaccurate reporting, and damage to Plaintiffs' creditworthiness. Plaintiffs' credit reporting issues with Indiana Finance have also caused them to suffer emotional distress in the form of fear of credit denials. Plaintiffs have also suffered a concrete informational injury by failing to receive the complete and accurate reporting the FCRA entitled them to receive.

42. By inaccurately reporting account information relating to the debt after notice and confirmation of its errors, Indiana Finance failed to take the appropriate measures as required under 15 U.S.C. § 1681s-2(b).

43. Plaintiffs have been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and they are entitled to recover reasonable attorney's fees and costs. *See* 15 U.S.C. §§ 1681n, 1681o.

**PRAYER FOR RELIEF**

Plaintiffs respectfully request the Court grant Plaintiffs the following relief against Defendant on Counts 1 through 2:

**FIRST CAUSE OF ACTION – MRS. COUCH V. INDIANA FINANCE**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681 ET SEQ. (FCRA)**

- an award of actual damages pursuant to 15 U.S.C. § 1681n(a)(1);

- award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);

- an award of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);

- award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) against Defendant for each incident of negligent noncompliance of the FCRA; and

- any other relief the Court may deem just and proper.

**SECOND CAUSE OF ACTION – MR. COUCH V. INDIANA FINANCE**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681 ET SEQ. (FCRA)**

- an award of actual damages pursuant to 15 U.S.C. § 1681n(a)(1);

- award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);

- an award of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);

- award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) against Defendant for each incident of negligent noncompliance of the FCRA; and

- any other relief the Court may deem just and proper.

## TRIAL BY JURY

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiffs are entitled to, and demand, a trial by jury.

Dated: December 9, 2021

Respectfully submitted,

/s/ David Krieger, Esq.
David H. Krieger, Esq.
KRIEGER LAW GROUP LLC
2850 W. Horizon Ridge Parkway, Ste. 200
Henderson, Nevada 89052

Miles N. Clark, Esq.
KNEPPER & CLARK LLC
5510 S. Fort Apache Rd, Suite 30
Las Vegas, NV 89148-7700

Attorneys for Plaintiffs